23-6138, Selman v. Aviation Training Consulting. Counsel for the appellant, if you'd make your appearance and proceed, please. Chief Judge Holmes, may it please the court. I'm Jason Smith, and I'm here on behalf of Nick Selman, who served our country for 16 years in the Marines. And when he did so, he would fly on angel flights with bodies from Iraq, soldiers from Iraq. And he developed PTSD. He also developed some physical symptoms. And the VA eventually awarded him 100% disability for his sacrifice for our country. Because there is ample evidence that a pretext of the stated reason is unworthy of credence, as Justice Scalia required in St. Mary's Honor Hall, and because there's evidence that Rick Sofji, who expressed his displeasure with my client's receipt of 100% VA disability benefits, because there's evidence that he was directly involved in the decision, we're asking the court to reverse the summary judgment of the district court and remain the case for a trial. Is it your view that Mr. Sofji was the only biased participant in the decision to not renew him, to let him go? Well, Mr. Sofji certainly was the person who strongly expressed his displeasure with my client's disability status. But there is evidence that Mr. Mueller, who overheard the discussion and who testified later, and we believe falsely, that the key evaluation, the January 31st evaluation, on which the employer said they based their recommendation that Mr. Selman's contract not be renewed. Was that a separate thesis for your cat's paw theory based on Mr. Mueller? That is one of the bricks that builds the ample evidence that establishes the cat's paw. Not only Sofji, who is listed on the review as a reviewer, but Mueller testifies that he presented it to Mr. Selman. We have case law that says that reviewers or presenters to the decision maker does not support cat's paw. Actually, there's at least one case that's so held. Yeah, this court has repeatedly held that if an individual with bias is shown to have influence or leverage over the decision, then it can be evidence of the causal link establishing the cat's paw theory. I suppose it depends on the influence. It could be so great. But being a presenter of evidence or a first examiner, we have evidence that that is not cat's paw. Well, Your Honor, I believe that the evidence, there is the Parker versus United Airlines case in which Chief Judge Holmes was on the panel, where they said when there was an independent third party review after the fact, that that kind of wiped away the cat's  paw, even though the review relied significantly on the evidence of the presenter. Well, in that case, there was no firm evidence that the presenter had expressed any bias. In this case, it is undisputed that he expressed bias. That being Mueller? That being Sofgi. Well, let's see. I mean, to your point about putting on bricks, so putting bricks on to build up to the cat's paw, we have to, what we need to try to determine analytically is who in the process do you claim actually was animated by prohibited bias, or had prohibited animus? I mean, had some, and so you've said Sofgi. But I mean, let's say that Mueller was an innocent party and just presented something to the next chain up. I mean, Mr. Cox was the person who made the ultimate decision. So I guess what I'm trying to understand just analytically is the taint of bias. Is that restricted to Sofgi, or does it affect Mueller too? Not the act of presentation, but does he, are you saying that he also had some sort of prohibited animus? Yes, Your Honor. Good question, and we are. We're saying Sofgi and Mueller had prohibited bias. And the way you get to it with Mueller is Mueller claims that he showed the evaluation to Selman and that Selman refused to sign. Selman testified, and it's clear in the record, Selman testified that at page 68, that he had never, at page 68 and 69, that he had never been presented that evaluation, and he had never, no one had ever discussed him. That same evaluation that says Sofgi was a reviewer. So the fact that Mueller is caught, that Mueller's alibi that he presented this evaluation and to Selman, and Selman didn't sign it, Selman proves the alibi is false. OK, and your view would be that that proving of falsity in itself sort of bespeaks or is an indicator of prohibited bias? Yes, because Mueller also was a witness to the interaction, and Sofgi is listed as a reviewer on the evaluation that Mueller claims to have shown Selman, but Selman denies he was ever shown, and his signature does not appear, while his signature does appear on the January 9th review. OK, well, one of the things that you mentioned, Parker v. United Airlines, one of the things that needs to be clear here, it seems to me, is the question of, well, CASPA turns on whether the person who made the decision uncritically relied on essentially the material that had been tainted by bias. And what is your best evidence that Mr. Cox uncritically, that's the language, relied on what had been presented to him? Because looking as best I could tell, that's not true. I mean, that he evaluated the information, including the fact that the flight certificate was not renewed, and that in and of itself, is it not grounds for not renewing his contract? Well, his certificate was renewed. His certificate was renewed the day before he was told that his contract wasn't renewed. And in fact, the HR person told him, we'll get you a contract now that it has been renewed. His FAA certificate was renewed. Before the decision was made. Before the decision was made, before February 5th. Well, then, well, OK, well, let's assume that's true. Then, well, I mean, I'm saying, let me check that. But let's take that as a given. But that doesn't change the basic premise of my question, which I want to understand from you, that Mr. Cox, based upon the information he had, and let's assume he could have been wrong about whether he thought the flight certificate was renewed, that in itself would not give you a claim of discrimination. So the point would be, where is there evidence that Mr. Cox uncritically relied on things that would have been tainted by bias? If you review the affidavit, Mr. Cox relies on two vice presidents' recommendations. One of the vice presidents is the vice president who disciplined Sofgy for making the bias remarks against Mr. Selman. The employer themselves argues that the reason they recommended his non-renewal was the January 31st review. The January 31st review that my client did not sign, although he signed the January 9th review, and he refused to sign, that they claimed he refused to sign, but he claims he was never shown. The district court, in its opinion, recounts that that is the primary reason for the denial of the renewal of the contract. The January 31st? Yes. OK. The one that he says that was not presented to him, and he didn't sign? Yes. OK, well, let's just operate from that factual universe. Even then, the question becomes, is there a basis to believe, not that Mr. Cox was misguided, but that Mr. Cox did not undertake his own examination of the facts and determined to act on non-renewal of the contract? Because the question is, under the Casbah theory, as sort of amplified by Parker, that's really what we're focused on. And that's the only way that you can prevail. Well, the United States Supreme Court in Reeves said you look at the actual decision maker, not the titular decision maker. And in Parker, the analysis was that there was an investigation through a grievance process, and based on that information, the decision maker made the decision without the taint of the FMLA. In that case, it was FMLA leave. In this case, the review was the reason that the non-renewal was recommended. One of the two decision makers, and they say the actual decision makers were the two vice presidents, one of whom was aware of the complaint. There's no evidence that Cox did any independent investigation, that he just reviewed the information that was presented to him, and he rubber-stamped the decision that the two vice presidents made. Did you depose him, Cox? We did not. Why not? Well, we deposed five different people. We deposed Mueller, Dutervent. We, I think we deposed Young, we deposed Sofji, and we deposed one other person. Because we thought Cox, there was no showing that Cox had done anything independent to make a decision. He merely relied on information that was provided to him. Well, the point is, you needed to prove that. I mean, that's the basis of Cat's Paw Theory, that you need to show that that's that individual, that person who signed off, you know, titular head or otherwise, is that that person is the acting party for this termination. And to that point, isn't it undisputed that Mr. Cox, he didn't know about the HR complaint. He didn't know about the disabilities. He didn't know about the reasons for the FAA certificate issue. He didn't know any of that, right? Well, I don't know that he said that he didn't know about the disabilities, because it was on my client's application. But with regard to Mr. Cox, the standard set forth in Parker, it did not, that involved a full-scale investigation. If you look at Cox's declaration, Cox doesn't indicate that he did a full-scale investigation as the court said, let the employer off the hook in Parker. The Supreme Court in Reed said, you look at the actual decision maker. And the actual decision maker here is Sofji. Sofji recommends. Parker, Sofji, did Sofji have the ability to fire the plaintiff? He was the, at the Kuwait location, he was the highest ranking official. And he is the person who first recommended that Selman not be renewed. Well, that didn't answer the question. The question is, could he fire him and not renew him? And the answer is no, right? Well, he could recommend his nominee. OK. Well, then he was not the final decision maker. I mean, Reeves, I mean, Reeves, known for its pretext analysis, what about Reeves' apply to Katzpah theory? Well, Reeves, there was a question as to whether the supervisor was the actual decision maker. If you look at the writing in Reeves, they focused on the decision maker who made the age-related comments, too old to come over, you were so old you came over on the Mayflower. And they focused on his comments to say that the Fifth Circuit had parsed the evidence too much and that there was a fact issue with regard to whether or not there was some evidence that there was age animus by the actual decision maker. Was Reeves the Katzpah case? Reeves is the precursor to Staub, where they discuss the company's liability for a supervisor who's not a final decision maker. Well, I get that. They don't use the term Katzpah. No, they don't. But they conduct that analysis. OK. Unless you have anything else, I'll reserve my remaining time for rebuttal. Sure. Thank you. Your Honors, may it please the Court, I'm Phil Bruce representing Appellee Aviation Training Consulting. Plaintiff admitted without any attempt to distinguish or discuss all of ATC's undisputed material facts. That includes the very reasons and motivations the decision makers came to in deciding not to renew Mr. Soman's one-year contract. The only evidence we have in the record is their declarations. There is nothing in their decisions or the declarations that ties that to Softy's recommendation, nor is there any other evidence that does so. And plaintiff admitting these facts, as the district court noted, is fatal to his case. And ATC would respectfully ask that this court affirm for several reasons. First, plaintiff has no evidence of a tribal Katzpah theory. As Chief Judge Holmes has referenced, the gist of the Katzpah theory is that the plaintiff has to show there was some uncritical reliance upon the alleged bad actor, or Softy's recommendation here. But here, there is no record evidence that the decision makers relied upon Softy's recommendation in the first place. And I can't stress that enough. There's nothing in here. You can't stress it enough. What input did the decision makers, that is Young and Stevens, what input did they have other than Softy's comments and Cox? Yes, Your Honor. So there's really three things that would, even assuming they had relied upon Softy's recommendation, there's three independent bases for their decision that would sever any causal connection. So the first is Mueller's review and view of plaintiff's marginal performance was what they relied upon, which is both in the performance evaluation and in a separate email where Mueller says, I'm ranking him three of three of the loadmasters and ranking him. Did they say, did the decision makers say that was the reason we decided not to renew? That's one of them, Your Honor. The second is Mike Young, he was involved in the recommendation process, said that based on his own view of plaintiff's performance, that it was consistent with what Mueller had observed and that when Young had worked with plaintiff in Kuwait for approximately six months from April to September, he saw that he was performing below the other loadmasters. And it's admitted that he even coached him to the extent that he needed to tighten up his performance. And then there's- Is there any evidence that Mueller's review, that Mueller was operating under some sort of prohibited animus as it relates to Mr. Selman? I mean, that's what in part I heard from opposing counsel today, that Mueller would be in the scope of people who was operating from prohibited animus. No, Your Honor. And I think plaintiff's point here in argument was that there's some dispute over whether he actually showed the review to plaintiff or not, which nothing in that, even taking that as true, raises some evidence or reference to any type of discrimination or retaliatory animus. And plaintiff has said that Mueller saw this, what we've referred to as the November incident, the conversation between Sofji and plaintiff. He says he was there, but that's not accurate. There's no record evidence that he was there. Plaintiff admits that he never spoke to Mueller about his PTSD or any specific disability. He admits he never spoke to Mueller about his complaint to HR, which is the actual protected conduct that's at issue, not just this November incident. Undisputed material facts, says plaintiff admits he has no personal knowledge of what Mueller knew about the November incident, that he never told him about that. Undisputed material fact is key, or sorry, undisputed material fact 13 is key. And that one, Sofji Cox-Stevens-Young and the HR director, Williams, submitted never told Mueller about the November incident or the complaint to HR. And none of those individuals had any reason to believe that Mueller knew about that. In fact, I don't think in his briefing plaintiff even raises any argument that Mueller knew of the actual protected conduct of the report to HR, as opposed to just this conversation between Sofji and plaintiff. Why couldn't a jury infer animus from that? If Mueller testified he heard about the argument between Mr. Sofji and Selman? Your Honor, he didn't testify to that. In fact, he testified that he was not there on that day, and he had had no knowledge of the November incident until well after he did the performance evaluation. And he didn't even know about the complaint to HR until his own contract was not renewed and he was no longer working at the company. And plaintiff's own words and testimony show that Mueller was not a witness. So plaintiff was asked in his deposition, he was present, and he testified that there was three people there, John Cawley, Jay Cobb, and Lonnie Anderson. And on Appendix 186, you see Selman's own notes of this conversation. And he does not reflect Mueller being president. At most, plaintiff points to testimony that Mueller would often work in his office, which was apart from the bullpen where this conversation took place, with his door open and his headphones on. And none of that is an inference of any type of knowledge or of either the November incident or. You said there was three people that gave input to the ultimate decision makers of Young and Stevens. You're talking about Cox. You talked about Mueller. Who is the third one? So the three people, Your Honor, are Dennis Stevens, Mike Young, and Robert Cox. And on Robert Cox, as Young, Cox, and Stevens, Stevens was one of the ultimate decision makers. Yes, he made a recommendation to Mr. Cox that made the final determination. Did Cox do it unilaterally and not, so Cox just could do that completely on his own? Well, he didn't take an uncritical view of this decision because, one, he relied upon Mueller's views of Selman's marginal performance. He relied upon Young's own personal observations in Kuwait. And then third, as Chief Judge Holmes noted, he also looked at the fact that Mr. Selman did not timely renew his required FAA medical certificate. And to Robert Cox, that indicated that Mr. Selman had issues with the same things that Mueller did, including issues or marginal performance with communication, initiative, and dependability. Was it true that he had his certificate by the time that he was terminated or not renewed? I don't know the timing. I don't know if there's any record evidence that Mr. Cox knew that it had been renewed. And in fact, I don't think it's the fact that it had been renewed as it is that it was untimely renewed, that it had, in fact, and admittedly expired for a period and should have been renewed before then. And I want to also address that even if Mueller did know about this November incident or the complaint, under the court's jurisprudence, including the Anderson v. AOL case that we've cited, that's not sufficient to create any pretext. And under plaintiff's theory of the case that Mueller somehow has some bias or animus, retaliatory or discriminatory animus towards plaintiff, he would have to show that Mueller both had that animus and had an intent to cause an adverse employment action. And there's no evidence of that intent, as we have covered. And merely not joking around with him is not sufficient to get there under, for example, Kenfield v. Colorado Department of Public Health, where court held that just an unfriendly work environment's not evidence of pretext. And by the plaintiff's own view of the case, you have Sopcich and Mueller. And beyond that, when Mr. Young looked across the scope of what evidence was available, he would also have Stevens, Young, and his knowledge of untimely renewal of the certificate. That's correct, Your Honor. Yes. He had all three bases that would cancel out any causal link that when Mr. Cox was looking at those. And there's also no intent to cause any adverse action by Mr. Mueller. There's no facts that Mueller made any type of recommendation as to Mr. Selman's renewal. All he was doing was merely passing on his own views of plaintiff's performance. And a plaintiff must establish more than influence or input in the decision-making process for there to be a cat's paw theory. I also want to address that plaintiff and Sopcich not signing this performance evaluation is not evidence of pretext for several reasons. First, as the district court analyzed this correctly, there's nothing in the record that shows there was a substantial procedural irregularity that would show that Mueller did not honestly believe the substantive views of Selman's marginal performance. And one thing you can look at that, and that's the Doak versus PPG Industries case and the Barry T Mobile case that we cite, is plaintiff ignores the email from Mueller saying, here's additional thoughts I have on him. Plaintiff has not identified any argument or policy that would prohibit the decision-makers from looking at those other comments outside of the performance evaluation. And there's also no established policy that's in place, and that's admitted. It's admitted that the performance evaluations did not start until Sopcich took over in September as the director of operations, and that all three of the decision-makers, Young, Stevens, and Cox, were not aware of what policy was in place at the time. And that is similar to the Barry case, where this court discussed that there was no evidence, there was undisputed, that the decision-makers were not aware of any rigid policy in place. And it's the same thing here. So plaintiff can't point to any established policy. Further, Mueller testified that he If I can hit the pause button for a second. It's my recollection that you've made arguments here about whether they satisfy the prima facie case as it relates to the first prong, right? Yes, Your Honor. Even though those arguments obviously are preserved and before us, there wouldn't be anything inappropriate about us going to the third pretext prong and resolving this matter, right? You're correct, Your Honor. And the district court itself also assumed without analyzing the prima facie case. He assumed that and then ruled on pretext, among others. And you can do the same thing here. We raise those because it's a de novo review. Also, plaintiff has not actually pointed to anything specific in the policy itself, even if there was one that was established. He's not pointed to the language. The language actually sets forth a two-part process for performance evaluations. One is you do self-evaluation of sorts in that section 1.3 of the policy. And that requires the rater to meet with the employee and talk about the obligations and the goals of the employee for that job. The second part is section 1.4, which is the actual performance evaluation. And nothing in that section requires, in its terms, the rater to meet with the employee. So plaintiff's not pointed to any specific policy language that was not followed. I also want to address the USERRA issue that plaintiff has raised. And the court can affirm the district court on the USERRA claim for really two main reasons. First is because of all the same reasons we have talked about, equally apply to whether there is a tribal issue for a USERRA claim. But in addition to that, plaintiff admits that the company knew he was a veteran. This position required, if not highly preferred, military service because of the nature of the job working in Kuwait and training the Kuwait Air Force. Moreover, all of the decision makers are of the same protected class as plaintiff. That is, they are all disabled American veterans. And this court's jurisprudence and many others have said that if the decision maker is of the same protected class, that belies any suggestion of pretext. But beyond that, plaintiff doesn't make any type of USERRA claim as a matter of law because if you look at the plain language of USERRA, nothing in the anti-discrimination or anti-retaliation provisions of USERRA and 38 USC 4311 reference disability or particularly VA disability ratings. And so there's nothing in the plain language of the statute that would give rise to a USERRA claim. Are you aware of any court that has recognized that USERRA does cover disability discrimination? I am not, Your Honor. And I don't believe plaintiff has pointed to any case that has done that. At most, plaintiff has argued, well, this is a broad remedial statute, and so we need to broadly interpret it. But that doesn't allow the court to add in information that's not in the plain language or an interpretation that's not in the plain language. Moreover, if you look at the statutory structure of USERRA, it has the anti-retaliation, anti-retaliation provisions, and then the re-employment provisions. And USERRA has a unique escalator principle, meaning that if a service member goes and performs their military obligations and comes back, they have to be put back in the place that they would have been in, including raises, promotions. Well, Congress obviously could see that there could be issues of putting an employee into not just the same position, but a higher position. And so in the re-employment provisions of the statute, Congress did address, what do you do with a service-connected disability? And that's utterly absent from the anti-discrimination, anti-retaliation provisions. And Congress didn't think there was a gap there, because they had passed the ADA four years earlier. And so if there is a service member that has a disability, whether it's service-connected or not, they still have a remedy. And then to your point, Judge Russman, I'm not aware of any cases that have held that USERRA includes any type of allegations or claim based off of a service-connected disability, or particularly references to VA disability rating. And with that, I see that my time is up, unless judges have any further questions. Thank you. Thank you for your argument, counsel. May it please the court? Real quick, counsel misrepresented the record with regard to Mueller, and Mueller's awareness of the interaction between Sofgy and Selman. At appendix 38 and 132, at appendix 123, 124, 132, Mueller testifies at length about him hearing the argument that lasted 20 or 30 minutes, where Sofgy went on a tirade against Selman, because Selman details what he told him. That he called him a criminal, that he called him a cripple. So that evidence is clear. And then Mueller is the one who is caught in a lie, because he claims he showed it to Selman, and Selman, under oath, denies that he ever saw that. And all of the decision-makers say that the review was a factor in their decision. And that's the but-for cause, a factor. There can be more than one factor, is enough evidence to show discrimination in the decision. So Mueller's review, which Sofgy is listed as a reviewer, on the document, at page 48 of the deposition, he is, Mueller concedes that he's a reviewer, that Sofgy's a reviewer. And that bias, with the comments, with the discipline. Who disciplined Sofgy? Stevens, who was the decision-maker, who was one of the two decision-makers, the vice presidents, who make the actual decision that was reviewed by Cox. They characterize him as one of the two actual decision-makers. So that is the link that shows that they had influence or leverage over the decision. And Selman's disability and his complaint of disability discrimination was a factor, was a cause of, at least there's ample evidence, that a jury should decide that issue. Unless you have any further questions, I'll say no more. I guess the last. You're at 142 over. All right, thank you. Case is submitted.